**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| PAUL PERSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CAUSE NO. 3:07-CV-0147 PS |
| ) | |
| EDWIN BUSS, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

Paul Person filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a finding by a disciplinary hearing board ("DHB") at the Wabash Valley Correctional Facility (" WVCF") in Institutional Case # WVE 06-04-0073. According to the conduct report, on April 16, 2006, the petitioner and an inmate named Cummings "began to engage in a physical confrontation. . .. Officer Bean then attempted to separate the two offenders. After separating them, Officer Bean then attempted to restrain offender Person. In the process of resisting Officer Bean sustained serious bodily injury." (DE 11-2).

On April 26, 2005, a three member DHB found Person guilty of battery, sentenced him to one year in disciplinary segregation, deprived him of 180 days of earned credit time, and demoted him to a lower credit time earning classification. Person appealed unsuccessfully to the facility superintendent and the final reviewing authority.

Where prisoners lose good time credits at prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact

finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). Only "some evidence" is needed to support the decision of the prison disciplinary board. *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985).

The WVCF has security video cameras strategically placed around the facility, and this incident was videotaped. Person alleges in his petition that "had the DHB allowed the petitioner to review and show the videotaped incident in question there would have been conclusive evidence that the petitioner did not touch the officer he is accused of battering." (Petition at p. 3). According to the screening report, Person requested the security videotape as evidence. (DE 11-3). The DHB determined that to allow the petitioner to view the videotape would jeopardize the security of the facility, and elected to review the video outside his presence. According to the report, signed by all three DHB members, "the video reflects the contents of the conduct report." (DE 11-5). In its report of disciplinary hearing, the DHB relied on the videotape and staff reports to find Person guilty of battery.

*Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) provides prisoners the right to call witnesses and present evidence in their defense. But this is not an unqualified right, and prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Forbes v. Trigg*, 976 F.2d 308, 313 (7th Cir. 1992), citing *Bell v. Wolfish*, 441 U.S. 520 (1979). Prisoners have the right to have relevant videotapes reviewed by the DHB, but they do not necessarily have the right to view the videotape themselves. *Piggie v. Cotton*, 344 F.3d 674 (7th Cir. 2003); *Gaither v. Anderson*, 236 F.3d 817 (7th Cir. 2001).

2

In his traverse, the petitioner cites *Piggie* for the proposition that the security concerns cited by the DHB did not justify keeping the videotape from him and that the DHB deprived him of due process when it did not let him view the tape. The petitioner believes the videotape "clearly shows that Person was running away from Cummings and that, in an attempt to stop Cummings, Officer Bean slipped and fell in a puddle of coffee. This was not the fault of Person." (DE 18 at p. 5).  He argues that "the DHB should have allowed the petitioner to review and show the videotaped incident in question, because there would have been conclusive evidence that the petitioner did not touch the officer he is accused of battering." (DE 18 at p. 4).

The petitioner's legal argument on this point is well written and, as he points out, the Seventh Circuit was not particularly impressed with the security concerns expressed by the prison officials who denied Piggie the opportunity to review a videotape of his cell extraction. But the respondent has a better argument than the officials in *Piggie* because that case dealt with a hand-held video camera. The camera in this case is fixed security monitoring camera such as the one the Seventh Circuit dealt with in *Gaither v. Anderson*. While the question presented here is a close one, the court will, in the interest of caution, consider the videotape.

In *Piggie*, the Seventh Circuit stated:

> Nor can we say, on this record, that the CAB's refusal to give Piggie access to the videotape was harmless . . . the district court did not order the state to submit a copy of the videotape for *in camera* review. Without some idea of what is on the tape, we cannot evaluate the merits of Piggie's claim that his defense was hampered by not being given access to it.

*Piggie v. Cotton*, 344 F.3d at p. 679.

The respondent submitted the videotape of the incident that resulted in the conduct report against Mr. Person along with the administrative record. The court has reviewed that tape several times in real time and in slow motion, frame by frame. In real time, the tape is confusing, but

3

reviewing it frame by frame it becomes comprehensible.

The facts the prison investigator gleaned from the videotape are stated in the report of investigation of incident (DE 11-3). According to the investigator, the tape revealed that Person attacked Cummings, that Correctional Officer Paul Bean attempted to restrain Person, and that Person resisted and pushed Officer Bean into a table, breaking his jaw. Person told the investigator that Officer Bean slipped on some spilled coffee. According to the investigator, "the video revealed that there was spilled coffee, however not in the area that Officer Bean was in." (DE 11-3).

In his traverse, the petitioner states that he and Cummings were engaged in a fight and:

> When Officer Bean intervened and attempted to handcuff Person, Cummings attempted to continue his assault on Person. Under threat of being assaulted while handcuffed, Person attempted to run. As Person tried to run, and while Cummings continued his assault on Person, Officer Bean slipped on a cup of spilled coffee and injured his head.

(DE 18 at p. 1).

The petitioner suggests that Cummings initiated the incident by attacking him. But the videotape substantiates the investigator's observation that Person was the aggressor. The tape shows Cummings walk past Person, who rose from his bench and hit him with his fist. Cummings fell onto a table and Person then pulled his pants off.

In his traverse, Person suggests that "in an attempt to stop Cummings, Officer Bean slipped and fell . . .." (DE 18 at p. 5). But the videotape establishes that Officer Bean was near the petitioner, not Cummings, when he fell.

The petitioner suggests that the tape would show that he attempted to run, that while he was attempting to run Cummings continued his assault on him, and that Officer Bean slipped on spilled coffee. The tape does not show that Cummings was in a position to attack Person after

4

Officer Bean intervened. There is a table between Cummings and Person, and another officer entered the picture and interposed himself between the two inmates, facing Cummings. Indeed, the video shows that after several frames where Officer Bean was apparently attempting to restrain him, Person moved toward Cummings, leaving Officer Bean on the floor in his wake.

Finally, the petitioner insists that a puddle of spilled coffee on the floor, rather than some human agency, was the proximate cause of Officer Bean's injuries. The videotape does show what appears to be a puddle of liquid on the floor but, as the investigator observed, it is several feet from where Officer Bean fell.

The videotape does not support an inference that Officer Bean slipped on a puddle of spilled coffee, and it does not contradict an inference that Officer Bean fell or was pushed to the floor while attempting to restrain the petitioner. After viewing the videotape, the court concludes that it is not exculpatory because it does not show, as the petitioner suggests, that Officer Bean slipped on a cup of coffee, nor is it consistent with the petitioner not resisting Officer Bean's attempts to restrain him. Accordingly, even if the DHB erred in not allowing the petitioner to view the videotape and point out relevant aspects of the tape to the them, the DHB's failure to do so was harmless error.

The petitioner's second claim is that "new evidence has come to light that proves the petitioner's innocence. Officer's sworn deposition taken subsequent to DHB finding of guilt." (Petition at p. 3). The petitioner has submitted a deposition taken of Officer Bean taken in *State of Indiana v. Paul Person,* 77C01-0606-FD-00034. In this deposition, Officer Bean states that he does not recall the petitioner grabbing him and throwing him to the floor but that Person resisted being cuffed, tried to get away from Officer Bean, and that while Person was struggling, Officer Bean "was thrown into the tables." (DE 5-3 at p. 8).

5

The sworn testimony of the injured officer is that he received his broken jaw as a result of being thrown against a table by the petitioner while he was attempting to restrain and cuff him. This testimony certainly does not corroborate the petitioner's belief that Officer Bean slipped on a cup of coffee and not because of any action taken by the petitioner, nor does it contradict the conduct report.

According to the conduct report, the petitioner and Cummings "began to engage in a physical confrontation . . .. Officer Bean then attempted to separate the two offenders. After separating them, Officer Bean then attempted to restrain offender Person. In the process of resisting Officer Bean sustained serious bodily injury." (DE 11-2). Officer Bean's deposition testimony is entirely consistent with the conduct report and corroborates the charge against the petitioner. The conduct report and the deposition testimony both state that Officer Bean was attempting to restrain Person and that during the struggle with Person he was thrown against a table sustaining serious injury.

For the foregoing reasons, the court **DENIES** this petition.

**SO ORDERED**.

ENTERED: June 26, 2008

/s Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT